**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JULIE ANNE ZAEBST, RANJEEV TANWAR** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 23-1732** |
| | : | |
| **PROGRESSIVE ADVANCED INSURANCE COMPANY** | : | |

# MEMORANDUM

**KEARNEY, J.** June 29, 2023

A car owner called his car insurer to add his girlfriend to his car insurance policy. They do not live together. The insurer's sales representative told his customer car owner he would add the girlfriend to fully cover her under his insurance policy in the event of an accident. The insurer charged an additional premium, and the car owner paid it. The insurer sent policy language identifying the new premium, adding the girlfriend "to the Policy," and specifically naming her along with the boyfriend as a driver and resident relative. A truck hit the boyfriend and girlfriend while they rode a bicycle together a few months later. The insurer denied the girlfriend's claim for $5,000 in medical benefits claiming she is not a "named insured" on the revised Policy. The couple sued for breach of contract, bad faith insurance practices, unfair trade practices, and fraud in the inducement of the revised Policy. The insurer moves to dismiss all claims. But its chosen Policy language is ambiguous. The insurer added the girlfriend to the Policy and named her. It did not limit coverage or define her limited recovery in the revised Policy. What did the boyfriend buy if not coverage?  But the couple does not plead bad faith based solely on the insurer's interpretation of its chosen language. We dismiss the bad faith claim without prejudice. We proceed on the contract, unfair trade practices, and fraud in the inducement claims subject to our further review.

I. **Alleged Facts**

Ranjeev Tanwar bought a car insurance policy from Progressive Advanced Insurance Company in July 2022.[1] Mr. Tanwar called Progressive shortly after buying the Policy to add his long-time girlfriend Julie Anne Zaebst to his Progressive Policy.[2] Ms. Zaebst does not live with Mr. Tanwar.[3] Mr. Tanwar told Progressive's sales representative he wanted to add Ms. Zaebst as an insured under his Policy in the event of "any accident or issues."[4] The unidentified Progressive sales representative assured Mr. Tanwar his Policy would "fully cove[r]" Ms. Zaebst.[5]

Progressive added Ms. Zaebst to the Policy, increasing his premium by $57.00.[6] Progressive sent Mr. Tanwar a revised Renewal Declarations Page.[7] Progressive represented in the section entitled "Policy changes effective July 16, 2022": "JULIE ANNE ZAEBST has been added to the Policy."[8] Progressive further represented in the "Drivers and resident relatives" section notes Rajeev Tanwar as the "First Named Insured" and "JULIE ANNE ZAEBST" with no designation next to her name.[9]

**Policy changes effective July 16, 2022**

| | |
|---|---|
| Changes requested on: | Jul 13, 2022 09:22 a.m. |
| Requested by: | Rajeev Tanwar |
| Premium change: | $57.00 |
| Changes: | JULIE ANNE ZAEBST has been added to the policy. |

**Underwriting Company**
Progressive Advanced Insurance Co
P.O. Box 31260
Tampa, FL 33631
1-800-776-4737

**Drivers and resident relatives**   Additional information

| | |
|---|---|
| Rajeev Tanwar | First Named Insured |
| JULIE ANNE ZAEBST | |

Mr. Tanwar paid the increased $57.00 premium charged by Progressive for adding Ms. Zaebst to the Policy.[10] Progressive did not explain the differences in the Policy's defined terms "named insured," "additional driver," "rated resident," or "resident relative."[11] Progressive gave

verbal and written assurances Ms. Zaebst had "full rights and benefits" under the Policy upon her addition and premium payment.[12]

### *Progressive's representations on first–party benefits coverage.*

Progressive, through its Policy, provides different types of coverage: Part I covers "Liability to Others"; Part II covers "First Party Benefits"; Part III provides "Uninsured/Underinsured Motorist Coverage"; Part IV provides "Damage to a Vehicle"; and Part V provides "Roadside Assistance Coverage."[13] Progressive also defines the insured's duties in case of an accident or loss and general provisions applicable to the Policy. The Policy consists of the "Policy contract, your insurance application, the declarations page, and all endorsements to this Policy."[14]

Progressive, in Part II of its Policy, defines the agreement for first–party benefits coverage: Progressive will pay first–party medical benefits in the amount of $5,000 "for loss or expense *sustained by an insured person* because of bodily injury caused by an accident *and arising out of the maintenance or use of a motor vehicle* …."[15]

Progressive then defines, in Part II of the Policy, key terms when used in the context of first–party benefits coverage, including medical expenses:

- "Insured person" is defined as "*you, a relative or a rated resident*" *and* "any other person … *while occupying your covered auto* with the express or implied permission of you, a relative, or a rated resident; *or while not occupying a motor vehicle if injured as a result of an accident* which occurs in Pennsylvania *involving your covered auto* …";[16]

- "Your covered auto" means a "motor vehicle for which you have purchased … Part I–Liability to Others Coverage if the motor vehicle is: (i) owned by you; or (ii) shown on the declarations page; and … First Party Benefits Coverage …";[17]

- "Motor vehicle" means a "self-propelled vehicle, operated or designed for use upon public roads. However, motor vehicle does not include a vehicle operated: a. by muscular power; or b. on rails or tracks."[18]

Progressive, in the General Definitions section of its Policy, defines, in relevant part:

- "You" and "your" as "a person shown *as a named insured on the declarations page*; and … the spouse of a named insured if residing in the same household at the time of the loss";[19]

- "Relative" means "a person residing in the same household as you, and related to you by blood, marriage or adoption …";[20]

- "Rated resident" means "a person residing in the same household as you at the time of the loss who is not a relative, *but only* if that person is both … listed in the 'Drivers and household residents' section on the declarations page; *and* … not designated as either an 'Excluded' or a 'List Only' driver."[21]

### *Progressive denies Ms. Zaebst benefits after an accident.*

A truck hit Mr. Tanwar and Ms. Zaebst while they rode a two-person bicycle on December 4, 2022.[22] Both Mr. Tanwar and Ms. Zaebst incurred medical bills for treatment received at the scene of the accident, in a hospital emergency room, and continued medical care and treatment for their injuries sustained in the accident.[23] Ms. Zaebst sought first–party medical benefits under the Policy for her medical expenses.[24] Progressive denied Ms. Zaebst's claim for first–party medical benefits because she is not an "insured" under the Policy.[25]

### *Mr. Tanwar and Ms. Zaebst sued Progressive.*

Mr. Tanwar and Ms. Zaebst sued Progressive for refusing to pay the $5,000 in first–party medical benefits to Ms. Zaebst. They allege Progressive breached the Policy; denied benefits in bad faith in violation of Pennsylvania's bad faith statute;[26] violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law[27] in selling Mr. Tanwar the Policy adding Ms. Zaebst as an additional insured; and fraudulently induced Mr. Tanwar to enter the revised Policy and pay the additional $57.00 premium by representing Ms. Zaebst is an insured under the Policy when such representation is false.[28]

**II. Analysis**

Progressive moves to dismiss Mr. Tanwar and Ms. Zaebst's amended Complaint arguing: (1) the breach of contract claim fails because Ms. Zaebst is not an "insured person" and under the unambiguous terms of the Policy and the December 4, 2022 accident did not involve a "covered auto" as defined by the Policy; (2) the bad faith claim must be dismissed because Progressive's denial based on Policy language is reasonable; (3) Pennsylvania's Unfair Trade Practices and Consumer Protection Law does not apply to an insurer's handling of an insurance claim; and (4) the fraud claim is barred by the gist of the action doctrine.[29]

**A. Mr. Tanwar and Ms. Zaebst state a claim for breach of contract.**

Progressive contends its Policy language is unambiguous: Ms. Zaebst is not an "insured person" as defined by the Policy and the accident did not involve Mr. Tanwar's "covered auto" for purposes of first–party medical benefits.

Ms. Zaebst and Mr. Tanwar respond Progressive ignores the allegation Mr. Tanwar added Ms. Zaebst to the Policy as a "named insured" and Ms. Zaebst's "status" under the Policy is a material issue of fact subject to discovery. Ms. Zaebst and Mr. Tanwar argue the Policy is ambiguous because the Declarations Page adding Ms. Zaebst to the Policy is deceptive and misleading.[30]

We must enforce clear and unambiguous language of an insurance policy.[31] Policy language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense" when applied to "a particular set of facts."[32] We must not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity" and we are directed to "interpret the policy so as to avoid ambiguities and give effect to all of its provisions."[33]

5

Progressive agreed to pay first–party medical benefits: (1) for loss or expense sustained by an "insured person" because of bodily injury caused by an accident; **and** (2) arising out of the maintenance and use of a "motor vehicle." The parties dispute the meaning of the term "insured person."

We read the contract language chosen by Progressive in the Policy as requiring it pay first–party medical benefits to an "insured person" defined in two buckets:

1. "you, a relative, or a rated resident"; and

2. "any other person (a) while occupying your covered auto with the express or implied permission of you, a relative or a rated resident; or (b) while not occupying a motor vehicle if injured as a result of an accident which occurs in Pennsylvania involving your covered auto."

Progressive argues Ms. Zaebst does not fall into either bucket. She does not fall in the first bucket because she is not "the named insured"; she is not a "relative" of Mr. Tanwar; and she is not a "rated resident" because she does not reside with Mr. Tanwar. She does not fall in the second bucket covering "any other person" because the December 4, 2022 accident did not involve Mr. Tanwar's "covered auto."

Ms. Zaebst and Mr. Tanwar respond they allege—which we must accept as true at this stage—Mr. Tanwar added Ms. Zaebst as a named insured on July 13, 2022 and her "status" under the Policy is a fact issue subject to discovery.[34] Ms. Zaebst does not allege she is a "relative," a "rated resident" or "any other person" covered by the Policy; she and Mr. Tanwar allege she is a "named insured."

Progressive does not define its chosen term "named insured." It instead promises coverage is extended to "you" which it in turn is defined as "a person shown as a **named insured** on the declarations page." Progressive identifies Ms. Zaebst as being "added to the Policy" and her name

appears under the "Drivers and resident relatives" section. Mr. Tanwar appears as the "First Named insured."[35]

Progressive, through its revised Renewal Declarations Page, added Ms. Zaebst to the Policy in the "Policy changes effective July 16, 2022" box and in the "Drivers and resident relatives" box. We do not know in what capacity Progressive added Ms. Zaebst. We do not know the effect of adding Ms. Zaebst to the Policy in one portion of the Declarations Page and identifying her as a "Driver and resident relative" in another portion. The Declarations Page is ambiguous at least as to the type of coverage provided to Ms. Zaebst under a Policy providing different types of coverage. In its reply brief, Progressive asserts it is "undisputed" Ms. Zaebst "was added as a driver to the Policy and was afforded first–party medical benefits coverage subject to the terms and conditions of the Policy" but, under the clear and unambiguous Policy language, she does not meet the definition of an "insured person."[36] But under the terms of the Policy, Ms. Zaebst would always have been eligible for first–party benefits as long as she met the definition of "insured person" without Mr. Tanwar adding her to the Policy in some capacity at an increased premium. This theory only furthers our present view of an ambiguity precluding judgment as a matter of law today.

Progressive's argument relies entirely on the Pennsylvania Superior Court's analysis in *Grix v. Progressive Specialty Insurance Co.* involving a policy stacking issue three years ago.[37] We conclude *Grix*, decided by the Pennsylvania Superior Court on a summary judgment record, is distinguishable. In *Grix,* parents sued Progressive for underinsured motorist coverage after their daughter died in a car accident.[38] The daughter sat as a passenger in one of five cars owned by the parents and insured by Progressive. The policy carried stacked limits of underinsured motorist coverage. Parents sought to stack the underinsured motorist benefits. Progressive paid the

underinsured motorist benefits under one policy. But it denied the claim for stacked underinsured motorist benefits on the other four policies asserting the daughter did not reside with the parents at the time of her death in the accident making her ineligible for stacked benefits.

Parents sought a declaratory judgment their daughter is an "insured person" under the policy as a "resident relative" because she resided with them at the time of the accident, they listed their daughter as a "household resident" on the "Drivers and household residents" section of the policy's declaration page, and paid the premium to do so.[39] Progressive contested the daughter's "resident relative" status, claiming the daughter moved out of the family home after signing a lease to rent an apartment with roommates making her ineligible for stacked benefits under the policy.[40]

The Juniata County trial court found daughter did not reside at parents' home at the time of her death, the policy is unambiguous, and entered judgment in Progressive's favor. Parents appealed, raising four issues including whether the trial court erred when it held daughter, named by parents as a "Driver and household resident," is not a "designated insured."[41]

The Pennsylvania Superior Court affirmed the trial court. It explained while daughter "was an insured person under the policy, it is undisputed [parents] did not list her as a named or designated insured on the declarations page of the policy" and affirmed the trial court's finding daughter is not a resident of parents' household.[42] The Superior Court concluded the trial court did not err in finding daughter is not an insured entitled to stacked benefits.[43]

Progressive's reliance on the Superior Court's analysis in *Grix* is distinguishable and does not support Progressive's argument the inclusion of Ms. Zaebst's name in the "Drivers and resident relatives" section means the Policy unambiguously excludes her as a "named insured." First, the Superior Court decided the case on summary judgment, not a motion to dismiss. We have no record here to determine the factual dispute over Ms. Zaebst's status. Second, *Grix* appears to be limited

8

to stacking of underinsured motorist benefits and we did not find, nor did Progressive cite, a case applying *Grix* since the Superior Court decided it in February 2020 outside the stacking issue. Finally, and most distinguishable, Progressive in fact paid parents $250,000 in underinsured motorist benefits and refused only the claim for stacked benefits.

The question here is whether Ms. Zaebst is a "named insured." She alleges she is. Progressive argues she is not and the mere listing of her name under the "Drivers and resident relatives" section does not make her a "named insured" based on the reasoning in *Grix*. We find the *Grix* facts and rationale distinguishable at this early juncture. We are also left to wonder the facts and meaning surrounding Progressive's addition of Ms. Zaebst to the Policy and its inclusion of her name in the "Drivers and resident relatives" section of the Declarations Page. This conduct creates, at least at this stage, an ambiguity. We deny Progressive's motion to dismiss the breach of contract claim.

**B.  Mr. Tanwar and Ms. Zaebst fail to state a claim for bad faith.**

Pennsylvania's General Assembly provides a statutory remedy for bad faith conduct by insurers.[44] "Bad faith" is "any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith."[45]

An insured must allege the insurer: (1) "did not have a reasonable basis for denying benefits"; and (2) "knew or recklessly disregarded its lack of reasonable basis in denying the claim."[46] This two-part test covers "a range of insurer conduct" including an insurer's lack of good faith investigation, failure to communicate with a claimant, and delay.[47]

9

Progressive moves to dismiss the bad faith claim asserting its denial of Ms. Zaebst's first-party medical benefits claim is reasonable based on the Policy's language and, even if we determine its coverage decision is incorrect, there are no allegations sufficient to show its position is unreasonable or it acted unreasonably.

Mr. Tanwar and Ms. Zaebst respond they allege Progressive did not have a reasonable basis for denying Ms. Zaebst's claim because Mr. Tanwar added her to the Policy as a named insured and Progressive unreasonably delayed its coverage determination decision for months. Mr. Tanwar and Ms. Zaebst allege Progressive: failed to timely deny or pay benefits on behalf of Ms. Zaebst's claim and instead "left her in legal limbo with her hospital and physicians' bills outstanding for several months"; denied Ms. Zaebst first–party medical benefits on a finding she is not insured under the Policy; failed to provide a reasonable basis for its denial; did not provide a copy of the Policy to Ms. Zaebst; did not provide "evidence or adequate reason to explain" why it did not add Ms. Zaebst to the Policy as a named insured; and refused to pay first–party medical benefits.[48]

We conclude Mr. Tanwar and Ms. Zaebst fail to plead sufficient facts to state a plausible bad faith claim.[49] The allegations fail to meet the first prong of the *Terletsky* test. Mr. Tanwar and Ms. Zaebst must plead sufficient facts to plausibly state Progressive did not have a reasonable basis for denying benefits. Progressive denied the claim because it disputes Ms. Zaebst as a "named insured." The decision based on its reading of the Policy it wrote does not constitute an unreasonable basis. Courts in this Circuit "share the common understanding that a plaintiff cannot base a bad faith claim on the [insurer's] refusal to pay."[50]

Even if the allegations meet the first prong of the *Terletsky* test, Mr. Tanwar and Ms. Zaebst do not plead facts to support the allegation Progressive knew or recklessly disregarded its lack of reasonable basis in denying the claim. Mr. Tanwar and Ms. Zaebst allege Progressive failed to

10

provide evidence or information supporting its unilateral decision to deny Ms. Zaebst's first–party benefits, but in another paragraph allege Progressive denied the benefits because Ms. Zaebst is not an insured under the Policy.[51] To the extent Mr. Tanwar and Ms. Zaebst allege a "several month" delay—later identified as four months in their response to the motion to dismiss—in denying the claim, our colleagues have found delay of a year or more is not *per se* bad faith.[52]

Mr. Tanwar and Ms. Zaebst fail to plead specifics of bad faith beyond an alleged breach of the Policy. We are allowing the breach of contract claim to proceed. There are no allegations sufficient to "raise a right to relief above the speculative level."[53] We dismiss Mr. Tanwar and Ms. Zaebst's bad faith claim without prejudice.

### C. Mr. Tanwar and Ms. Zaebst state a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law.

Pennsylvania's General Assembly enacted the Unfair Trade Practices and Consumer Protection Law ("Act") to "protect consumers from fraud and unfair or deceptive business practices."[54] The Act applies to the sale of an insurance policy but not to the handling of an insurance claim.[55] The Act "applies to conduct surrounding the insurer's pre-formation conduct" making it different from Pennsylvania's bad faith statute applying to "post-contract formation conduct."[56]

An insured may state a claim under the Act for an insurer's pre-formation conduct by alleging: "(1) he or she purchased or leased goods or services; (2) the goods or services were primarily for personal, family or household purposes; and (3) the plaintiff suffered an ascertainable loss as a result of the defendant's unlawful, deceptive act" and allege the loss is caused by his or her justifiable reliance on the deceptive conduct.[57]

Progressive moves to dismiss this statutory claim arguing the Act does not, as a matter of law, apply to the handling of an insurance claim. Mr. Tanwar and Ms. Zaebst agree, but contend

11

they are asserting a claim for Progressive's conduct in selling the Policy. They argue Mr. Tanwar contacted Progressive to add Ms. Zaebst as a named insured to his auto Policy; Progressive's agent assured him the Policy would "fully cover" Ms. Zaebst in the event of an accident and did not tell him otherwise; Progressive added her to the Policy; Mr. Tanwar paid the increased premium; Progressive's agent did not explain the differences in the terms "named insured," "additional driver," "rated resident," or "resident relative"; deceptively gave Mr. Tanwar verbal and written assurances Ms. Zaebst would be added to the Policy will full rights and benefits; provided Mr. Tanwar with a deceptive and misleading declarations page; and increased his premium to include him to rely on the Policy and to increase Progressive's own profits without intending to provide services bargained for under the Policy.[58]

We must accept as true all well-pleaded allegations and drawing all reasonable inferences in Mr. Tanwar and Ms. Zaebst's favor today. They plead sufficient facts to plausibly give rise to a claim under the Act challenging Progressive's conduct in selling the revised Policy in July 2022. We deny Progressive's motion to dismiss the claim under the Act.

### D. The gist of the action doctrine does not bar the fraud claim.

Progressive moves to dismiss the fraud claim as barred by Pennsylvania's gist of the action doctrine. The gist of the action doctrine bars a purely contractual duty from serving as the basis for tort claims; tort claims arise from a breach of a duty owed to another as a matter of social policy while contract claims arise from the breach of a duty created by the parties' contract.[59] But the doctrine does not bar a pre-contractual duty not to deceive through misrepresentation or concealment.[60]

Mr. Tanwar and Ms. Zaebst respond their claim is based on fraud in the inducement; Progressive's sales agent misrepresented the coverage under the Policy for Ms. Zaebst to induce

Mr. Tanwar to enter into a revised insurance contract at a higher premium.[61] Mr. Tanwar and Ms. Zaebst argue their fraudulent inducement claim is collateral to the insurance contract and is not barred by the gist of the action doctrine.

The Pennsylvania Supreme Court in *Bruno v. Erie Insurance* undertook a thorough examination of the gist of the action doctrine in Pennsylvania nine years ago.[62] In *Bruno*, homeowners purchased a homeowner's insurance policy covering themselves and their two minor children including a separate endorsement covering physical loss to property caused by mold.[63] The policy obligated the insurer to pay for loss to the property caused by mold, the cost of testing to confirm the absence of mold, and the cost of removal of mold including the cost of tearing out any part of the property needed to access the mold. The homeowners discovered mold after moving into the home and contacted the insurer to make a claim. The homeowner asked for the payment of policy limits to have the mold tested and the insurer denied the claim based in part on a representation the mold did not pose a health problem. The homeowners discovered additional mold and the family began suffering respiratory problems. The homeowners tested the mold at their own expense, found it to be toxic and hazardous to human health, and demanded policy limits. The insurer eventually paid under the policy. The homeowners sued the insurer, including a claim for negligence for making false assurances regarding the toxicity of the mold causing the homeowners' harm. The insurer moved to dismiss arguing the gist of the action doctrine barred the negligence claim. The trial court dismissed the negligence claim as barred by the gist of the action doctrine. The homeowners appealed.

The Pennsylvania Supreme Court reversed the trial court. It reviewed the history of the gist of the action doctrine in Pennsylvania, including the Pennsylvania Superior Court's 2002 decision in *eToll Inc. v. Elias/Savion Advertising, Inc.*[64] In *eToll*, the Pennsylvania Superior Court

13

"seemingly added an extra consideration" to the gist of the action doctrine; to differentiate between a contract and tort claim brought in the same action we ask whether the claims are "inextricably intertwined."[65] The Supreme Court in *Bruno* backed away from the "inextricably intertwined" language and focused its analysis on the "nature of the duty" alleged to have been breached.[66] The nature of the duty allegedly breached is "the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract."[67] The allegations in the complaint "are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort … is not controlling."[68] "If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. … If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort."[69]

Neither party cites the 2014 *Bruno* decision. They instead dispute the import of the *eToll* decision twelve years earlier. We apply the most current thinking represented in the Supreme Court's *Bruno* "nature of the duty" analysis to determine whether the gist of the action doctrine applies here.[70] With these parameters informing our analysis, we turn to the allegations of the amended Complaint.

Mr. Tanwar alleges he called Progressive on July 13, 2022 to add Ms. Zaebst as a named insured. He alleges he specifically told the Progressive sales agent he wanted to add Ms. Zaebst as an insured under his Policy to fully cover her in the event of an accident. He alleges the Progressive agent assured him Ms. Zaebst would be fully covered by the Policy. Progressive added Ms. Zaebst

to the Policy and he paid the increased premium.[71] Mr. Tanwar alleges Progressive did not tell him Ms. Zaebst had only partial rights or benefits under the Policy and did not explain to him the differences among a "named insured," "additional driver," "rated resident," or "resident relative" with regard to benefits under the Policy.[72] He alleges he relied on the Progressive agent's representations in the sale of the Policy, specifically Ms. Zaebst's addition to the Policy with "all the rights of an insured and that all claims would be fairly and promptly paid."[73] He alleges Progressive made knowingly false representations to induce him to rely on the representations and pay for the increased Policy premium.[74]

We again accept these allegations as true and drawing all reasonable inferences in Mr. Tanwar's and Ms. Zaebst's favor at this stage. We conclude Mr. Tanwar and Ms. Zaebst are alleging the nature of the duty breached is Progressive's alleged misrepresentations made to induce Mr. Tanwar to purchase a Policy with no first–party benefits despite its agent's representations Progressive would cover Ms. Zaebst for "full benefits" under the Policy. The nature of the duty arises from a general societal duty to refrain from fraudulent representations and not a breach of a duty created by the insurance contract itself. We find the gist of the action doctrine does not bar the fraudulent inducement claim.

## III. Conclusion

We grant Progressive's motion to dismiss the bad faith claim. We deny Progressive's motion to dismiss the breach of contract, Unfair Trade Practices and Consumer Protection Law claim, and the fraudulent inducement claim.

---

[1] ECF Doc. No. 8, Amended Complaint ¶ 5.

[2] *Id.* ¶¶ 6, 7.

[3] *Id.* ¶¶ 1, 2.

---

[4] *Id.* ¶ 7.

[5] *Id.* ¶ 8.

[6] *Id.* ¶¶ 9, 10; ECF Doc. No. 8–1 at 1.

[7] ECF Doc. No. 8–1 at 1.

[8] *Id.*

[9] *Id.*

[10] ECF Doc. No. 8 ¶¶ 11, 13.

[11] *Id.* ¶¶ 33, 34.

[12] *Id.* ¶ 35.

[13] *See* ECF Doc. No. 14–1.

[14] ECF Doc. No. 14–1 at 1.

[15] *Id.* at 7, Insuring Agreement–First Party Benefits Coverage (emphasis added).

[16] *Id.* at 8, Part II, Additional Definitions ¶ 4 (emphasis added).

[17] *Id.* at 9, Part II, Additional Definitions ¶ 7.

[18] *Id.*, Part II, Additional Definitions ¶ 6.

[19] *Id.* at 3, General Definitions ¶ 17 (emphasis added).

[20] *Id.* at 2, General Definitions ¶ 11.

[21] *Id.*, General Definitions ¶ 10 (emphasis added).

[22] ECF Doc. No. 8 ¶ 15.

[23] *Id.* ¶¶ 21, 23.

[24] *Id.* ¶¶ 20, 22, 24, 25. Progressive agreed to pay $5,000 in first–party medical benefits, the statutory minimum under Pennsylvania law.

[25] *Id.* ¶¶ 29, 40, 43–45. We assume Progressive paid first–party medical benefits for Mr. Tanwar as he does not allege otherwise.

[26] 42 Pa. Cons. Stat. § 8371.

16

---

[27] 73 Pa. Stat. § 201–9.2(a).

[28] ECF Doc. No. 8 ¶ 34.

[29] A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[30] ECF Doc. No. 13–2 at 5.

[31] *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140–41 (3d Cir. 2023).

[32] *Id.* at 141 (cleaned up).

[33] *Id.* (cleaned up).

[34] ECF Doc. No. 8 ¶¶ 32, 33, 45, 63.

---

[35] ECF Doc. No. 8–1 at 1.

[36] ECF Doc. No. 15 at 1–2.

[37] No. 312 MDA 2019, 2020 WL 618557 (Pa. Super. Ct. Feb. 10, 2020).

[38] The court did not specify the daughter's age but it appears she was a young adult who moved out of her parents' home and into an apartment with roommates.

[39] *Grix,* 2020 WL 618557 at *1, n. 4.

[40] *Id.* at *2.

[41] *Id.* at *3.

[42] *Id.* at *6.

[43] *Id.*

[44] 42 Pa. Cons. Stat. § 8371. The General Assembly provides: "In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions: (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%. (2) Award punitive damages against the insurer. (3) Assess court costs and attorney fees against the insurer." *Id.*

[45] *Terletsky v. Prudential Prop. and Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994).

[46] *Williams v. State Farm*, No. 21-58, 2021 WL 2661615, at *4 (E.D. Pa. June 29, 2021) (quoting *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 790 F.3d 487, 498 (3d Cir. 2015)). The two-part test is referred to as "*Terletsky* test," so named after the Pennsylvania Superior Court's decision defining "bad faith" in *Terletsky* and adopted by the Pennsylvania Supreme Court in *Rancosky v. Washington Nat'l Ins. Co.*, 170 A. 3d 364 (Pa. 2017).

[47] *Id.* (quoting *White v. Travelers Ins. Co.*, No. 20-2928, 2020 WL 7181217, at * 4 (E.D. Pa. Dec. 7, 2020)).

[48] ECF Doc. No. 8 ¶¶ 26–30; 40–48, 55–58.

[49] The statutory bad faith claim may be preempted by Pennsylvania's Motor Vehicle Financial Responsibility Act, 75 Pa. Cons. Stat. § 1797. Unless Progressive's "conduct falls outside the scope of § 1797" of the Act, "and involves a bad faith abuse of the process challenging more than just the insurer's denial of first party benefits," the Act "preempts any statutory bad faith claim" regarding first-party medical benefits. *Canfield v. Amica Mut. Ins. Co.*, No. 20–2794, 2020 WL 5878261, at * 3 (E.D. Pa. Oct. 2, 2020) (collecting cases). If the bad faith claim is the denial of

first–party medical benefits "and nothing more, [Progressive's] alleged conduct is within the scope of § 1797 of the [Act]" and a statutory bad faith claim is precluded. *Id.* Mr. Tanwar and Ms. Zaebst's bad faith claim may be preempted. But Progressive did not move to dismiss on this basis and we do not base our decision on it.

We also wonder how Mr. Tanwar could have a claim for relief if, as Ms. Zaebst swears, she is a named insured entitled to $5,000 in benefits. They do not allege an agency relationship; they are not spouses, nor do they live together. Mr. Tanwar may have paid the $57.00 premium affording some concrete harm. But how do we have at least $75,000 in damages based on a fraudulent inducement of a $57.00 premium and the denial of a $5,000 contracted benefit? We will not venture where Progressive does not today ask. We will scrutinize Mr. Tanwar's standing and our subject matter diversity jurisdiction (i.e., more than $75,000 in damages) during our initial pretrial conference in a couple weeks.

---

[50] *Dietz v. Liberty Mut. Ins. Co.*, No. 20–1238, 2020 WL 3414660, at *3–4 (E.D. Pa. June 22, 2020) (collecting cases); *Hanna v. Palisades Prop. & Cas. Ins. Co.*, No. 23–1051, 2023 WL 4110067, at * 6 (E.D. Pa. June 21, 2023).

[51] ECF Doc. No. 8, *compare* ¶ 29 *with* ¶¶ 28, 43–44.

[52] *Williams*, 2021 WL 2661615 at * 5 (a delay of nine or ten months is insufficient to establish bad faith) (collecting cases).

[53] *Dietz*, 2020 WL 3414660, at *4 (quoting *Twombly*, 550 U.S. at 544).

[54] *Wenk v. State Farm Fire and Cas. Co.*, 228 A.3d 540, 550 (Pa. Super. Ct. 2020) (cleaned up).

[55] *Id.*

[56] *Holovich v. Progressive Specialty Ins. Co.*, 600 F. Supp. 3d 572, 584 (E.D. Pa. 2022).

[57] *Id.* (cleaned up).

[58] ECF Doc. No. 8 ¶¶ 33–39, 60–63.

[59] *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 216 (3d Cir. 2022) (citing *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 65, 68 (Pa. 2014)).

[60] *Id.* at 217.

[61] To state a claim for fraud under Pennsylvania law, a plaintiff must allege: (1) defendant made a misrepresentation or concealment; (2) material to the transaction at hand; (3) made with knowledge of its falsity or reckless disregard for the truth (for a misrepresentation), or calculated to deceive (for a concealment); (4) with intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) injury proximately caused by the reliance. *Id.* at 205. A claim for

fraudulent inducement requires proof of these six elements and "is available when a person under no duty to enter into a contract was deceived into doing so." *Id.* at 206.

[62] *Bruno*, 106 A.3d at 60–70.

[63] *Id.* at 50.

[64] 811 A.2d 10 (Pa. Super. Ct. 2002).

[65] *Bruno*, 106 A. 3d at 66–67.

[66] *Id.* at 68–69.

[67] *Id.*

[68] *Id.* at 68.

[69] *Id.* (citations omitted).

[70] We join our Court of Appeals in *SodexoMAGIC* in applying *Bruno* last year to a gist of the action analysis. *See SodexoMAGIC*, 24 F.4th at 216–17. As Judge Beetlestone observed a few months ago, the Pennsylvania Supreme Court's *Bruno* analysis differs from the Pennsylvania Superior Court's *eToll's* "inextricably intertwined" standard. *See Zaftr Inc. v. Lawrence*, No. 21-2177, 2023 WL 349256 (E.D. Pa. Jan. 20, 2023). As Judge Beetlestone explained: "While the *Bruno* court did not explicitly overrule *eToll* or its progeny, it explained that *eToll* creates a divide in the gist of the action jurisprudence, did not rely on any of the *eToll* factors in reaffirming the duty-based standard from which *eToll* departs, and cabined reliance on *eToll's* 'inextricably intertwined' language." *Zaftr*, 2023 WL 349256 at *22, n. 29 (quoting *Dommel Properties LLC v. Jonestown Bank & Tr. Co.*, 626 F. App'x 361, 366 (3d Cir. 2015)). Judge Beetlestone applied the *Bruno* duty-based approach and concluded the gist of the action doctrine did not bar plaintiff's fraudulent misrepresentation claims based on alleged fraudulent inducement. *Id.* at * 23.

[71] ECF Doc. No. 8 ¶¶ 6–11, 33–39, 67.

[72] *Id.* ¶ 34.

[73] *Id.* ¶ 67.

[74] *Id.*